UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ADAM ELEND, et. al.,

    Plaintiffs,

v.                                    CASE No. 8:03-CV-1657-T-TGW

SUN DOME, INC., et. al.,

    Defendants.

---

O R D E R

The plaintiffs in their second amended complaint seek, among other things, injunctive and declaratory relief against the United States Secret Service to prevent it from establishing protest zones and thereby interfering with their exercise of First Amendment rights at future political events. The defendant W. Ralph Basham, as director of the United States Secret Service, has filed a motion under Rule 12(b)(1), Fed.R.Civ.P., for dismissal on the grounds that the plaintiffs lack standing and that their claims are not ripe for judicial review (Doc. 60). Primarily because the plaintiffs' second amended complaint fails to allege the

threat of real and immediate injury, it does not create a justiciable controversy involving defendant Basham. Accordingly, the motion will be granted, and defendant Basham will be dismissed from this case.

I.

On November 2, 2002, the plaintiffs, Adam Elend, Jeff Marks and Joe Redner, protested during an event held for Governor Jeb Bush at the University of South Florida's Sun Dome at which President George W. Bush made an appearance (Doc. 53, p. 4, ¶11; Doc. 60, p. 3). In order to communicate their political messages to the event's attendees, the plaintiffs situated themselves on a median adjacent to a parking lot of the Sun Dome (Doc. 53, p. 7, ¶¶ 23, 24; p. 8, ¶25). According to the plaintiffs, their location was at least thirty feet away from the attendees who were waiting in line to enter the Sun Dome and over 150 feet away from the closest entrance (id. at p. 8, ¶25). Marks and Redner held placards with political messages while Elend videotaped the proceedings and distributed certain Supreme Court decisions (id. at p. 7,

¶24).  The placards contained the following three messages (id. at pp. 6-7, ¶22):

> 'FREEDOM OF EXPRESSION WOULD NOT TRULY EXIST IF THE RIGHT COULD ONLY BE EXERCISED IN AN AREA THAT A BENEVOLENT GOVERNMENT HAS PROVIDED AS A SAFE HAVEN FOR CRACKPOTS' TINKER V. DESMOINES, 393 U.S. 503
>
> 'WHY DO YOU LET THESE CROOKS FOOL YOU?'
>
> 'WAR IS GOOD FOR BUSINESS. INVEST YOUR SONS'.

The plaintiffs allege that, upon arriving on the median, officers from the USF police department informed them that they could not protest on the median, but that they were required to move to a designated area known as the "First Amendment [z]one" (id. at p. 8, ¶26; p. 9, ¶29). The plaintiffs attempted to explain to the officers their belief of the unlawful characteristics of the protest zone by pointing to printed copies of Supreme Court decisions and to the quote from the Court's decision in Tinker v. Des Moines (id. at p. 8, ¶27). A purported Sun Dome agent,

Kelly Hickman, also approached the plaintiffs and requested the plaintiffs to move to the area designated for demonstrators (id. at p. 9, ¶29).

After the plaintiffs refused to relocate, Hillsborough County Sheriff's deputies arrested them for "trespass after warning" in violation of §810.09, Fla. Stat. (id. at p. 9, ¶30). On April 30, 2003, Hillsborough County Court dismissed the trespass charge on the ground that no agent of the Sun Dome had the requisite authority to issue a trespass warning to the plaintiffs (id. at p. 12, ¶44; Ex. C).

On August 5, 2003, the plaintiffs filed a complaint against Sun Dome, Inc., the University of South Florida Board of Trustees, Cal Henderson (in his official capacity as Sheriff of Hillsborough County) and W. Ralph Basham (in his official capacity as director of the United States Secret Service), seeking a declaratory judgment, injunctive relief, damages, attorney's fees and costs (Doc. 1). Defendant Basham filed a motion to dismiss on the ground that the court lacked subject matter jurisdiction because the plaintiffs did not have standing to seek the

relief requested (Doc. 15).  After a hearing was conducted on the motion, an Order was entered granting defendant Basham's motion based on the complaint's failure "to allege that the plaintiffs desire to engage further in the type of activities that are the subject of this action" (Doc. 52). Consequently, the plaintiffs were granted leave to amend the complaint.

      The plaintiffs filed a verified second amended complaint asserting they were denied their constitutional right to protest (Doc. 53).  With respect to the Secret Service, the plaintiffs seek a declaratory judgment that in essence finds the defendant's actions to be in violation of the plaintiffs' rights under the First, Fifth and Fourteenth Amendments of the Constitution, 5 U.S.C. 702, and 42 U.S.C. 1983, and an injunction preventing the defendant from restricting the plaintiffs to designated protest zones at future public events (id. at p. 15, ¶58;  p. 16, ¶61; p. 17, ¶65; p. 18, ¶68).  Defendant Basham again filed a motion to dismiss, asserting that the court lacks jurisdiction because the plaintiffs do not have standing to establish a

case or controversy and because their claims are not ripe (Doc. 60). After the plaintiffs responded to the motion (Doc. 67) and defendant Basham filed a reply (Doc. 68), oral argument was heard on the motion.

II.

Although the plaintiffs seek damages from other defendants based upon the events of November 2, 2002, no such claim has been asserted against the Secret Service. Rather, the only relief sought with respect to the Secret Service is an injunction and a declaratory judgment regarding future events.

In support of the request for prospective relief, the plaintiffs allege that the Secret Service participated in the discussion concerning the protest zone and had the ultimate decision-making authority regarding the establishment of such a zone. Notably, however, the plaintiffs do not make any allegations that the Secret Service played a role in their arrests.

Although the prior complaint was dismissed due to the lack of any allegations that the plaintiffs desired to

engage further in activities like those they had planned for November 2, 2002, the second amended complaint still contains no allegations of any specific events at which the plaintiffs wish to protest. Rather, the plaintiffs merely allege that they "fully intend to peacefully express their viewpoints in the future in a manner similar to their activities on November 2, 2002[,] in concert with presidential appearances at the USF Sun Dome and at other locations around the country" (Doc. 53, p. 12, ¶46). Defendant Basham asserts that these allegations are not sufficient to establish standing.

At its constitutional core, standing concerns whether a plaintiff has made out a "'case or controversy' between himself and the defendant within the meaning of Art. III." Warth v. Seldin, 422 U.S. 490, 498 (1975). "The party invoking federal jurisdiction bears the burden of establishing" standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). Thus, the plaintiffs must allege "a personal stake in the outcome of the controversy" that justifies the federal court's invocation of its jurisdiction and

its use of its remedial powers over the case. Baker v. Carr, 369 U.S. 186, 204 (1962); Warth v. Seldin, supra, 422 U.S. at 498-99.

The plaintiffs must demonstrate three elements in order for standing to exist. First, the plaintiffs must have sustained an "injury in fact," meaning "an invasion of a legally protected interest." Lujan v. Defenders of Wildlife, supra, 504 U.S. at 560. This injury to a protected interest must be "concrete and particularized, ... and 'actual or imminent, [as opposed to being] conjectural or hypothetical'" Id. (internal citations omitted). Second, a causal connection must exist between the plaintiffs' injury and the challenged conduct. Id. Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 561.

Furthermore, a plaintiff seeking only injunctive or declaratory relief must prove not only an injury, but also a real and immediate threat of future injury in order to satisfy the injury-in-fact requirement. Koziara v. City of Casselberry, 392 F.3d 1302, 1305 (11th Cir. 2004). "When

a plaintiff cannot show that an injury is likely to occur immediately, the plaintiff does not have standing to seek prospective relief even if he has suffered a past injury." 31 Foster Children v. Bush, 329 F.3d 1255, 1265 (11th Cir. 2003), cert. denied, 540 U.S. 984 (2003).

The plaintiffs patently have failed to allege any threat of imminent injury. Thus, they allege only that they wish to express their viewpoints at presidential appearances in the future at the Sun Dome and at other locations around the country.

There is no allegation, however, that President Bush is scheduled for an appearance at the Sun Dome in the future. Notably, it does not seem that, although President Bush has been to this area several times since November 2, 2002, he has ever returned to the Sun Dome. There are a number of potential venues in this area for a presidential appearance, and, consequently, there is no reason to think that President Bush will ever return to the Sun Dome during his time in office.

In all events, the plaintiffs have certainly not alleged that in the two and one-half years since President Bush was at the Sun Dome he appeared there again, much less that the plaintiffs' First Amendment rights were impaired at such an appearance. Moreover, the plaintiffs have not alleged that at any of President Bush's appearances at other locations in this area their rights were violated. The failure to allege any unlawful conduct at a presidential appearance in this area in the period since November 2, 2002, contradicts any claim of a threat of a real and immediate injury. See <u>City of Los Angeles</u> v. <u>Lyon</u>, 461 U.S. 95, 108 (1983).

Since the allegation regarding the Sun Dome is insufficient to allege standing, <u>a</u> <u>fortiori</u>, the allegation of an intention to express viewpoints at presidential appearances "at other locations around the country" is deficient. That allegation does not even identify a specific event or venue at which the plaintiffs are purportedly threatened with future injury. Obviously, President Bush has made numerous appearances around the country since

-10-

November 2, 2002, and there is no allegation that the plaintiffs' rights were violated at any of them. Consequently, it would require gross speculation to conclude that the plaintiffs' rights will be violated in the future at some other place during a presidential appearance.

In short, where, as here, the plaintiffs are seeking only prospective relief, they must allege, in order to satisfy the standing requirement, that they face a real and immediate threat of future injury. The plaintiffs' allegation that they intend to express their viewpoints at unspecified presidential appearances in the future is not sufficient to create standing. Accordingly, their claim against defendant Basham will be dismissed for lack of standing.

### III.

Defendant Basham also asserts that the plaintiffs' claims should be dismissed because they are not ripe for review (Doc. 60, pp. 17-19; Doc. 68, pp. 7- 9). This contention is well-taken and provides a related, but distinct, basis for Basham's dismissal.

Case 8:03-cv-01657-TGW   Document 88   Filed 05/18/05   Page 12 of 19 PageID 1127

In this case, the issue of ripeness overlaps to a great extent with the issue of standing. <u>Hallandale Professional Fire Fighters Local 2238</u> v. <u>City of Hallandale</u>, 922 F.2d 756, 760 n.3 (11th Cir. 1991) (explaining that standing and ripeness "overlap to some degree and often collapse into each other"). Both standing and ripeness focus initially on the injury to the person bringing the action. <u>Wilderness Soc.</u> v. <u>Alcock</u>, 83 F.3d 386, 390 (11th Cir. 1996). However, standing asks whether the plaintiff is the proper party to bring the suit because there is sufficient injury to the plaintiff personally, while ripeness asks whether this is the correct time to bring the suit. <u>Id</u>.

"The central concern [of the ripeness doctrine] is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." 13A Wright, Miller & Cooper, <u>Federal Practice and Procedure</u>: Jurisdiction 2d §3532, p. 112. In deciding whether an issue is ripe, a court must evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.

The Association for Children for Enforcement of Support, Inc. v. Conger, 899 F.2d 1164, 1165 (11th Cir. 1990).

The allegation that the plaintiffs intend to express their political viewpoints at presidential appearances at unspecified locations around the country is clearly not fit for judicial decision. An important, if not dispositive, factor in determining the propriety of a First Amendment, or protest, zone is the geography near the site of the appearance. Thus, it has been said that, "[o]nce a site is chosen, geography can dominate the legal analysis." Bl[a]ck Tea Society v. City of Boston, 378 F.3d 8, 16 (1st Cir. 2004)(concurring opinion). That is certainly true in this case since the plaintiffs do not dispute the Secret Service's authority to establish a security zone, but rather challenge the location of a protest zone outside of the security zone. Consequently, until a specific venue for a presidential appearance is identified, a court could not reasonably undertake an evaluation of the lawfulness of a possible protest zone.

Furthermore, even with respect to the one location that was specified, the Sun Dome, the changing geography at that institution due to on-going development makes an assessment of a protest zone speculative. The uncertainty surrounding the evaluation of a protest zone near the Sun Dome is compounded by the potential changes in the security level. Thus, a protest zone that may be acceptable when the security level is at yellow (or three) may not be acceptable if the security level is orange (or four) or higher.

An attempt to identify an appropriate protest zone near the Sun Dome in the face of these uncertainties is unwarranted since there is no indication that President Bush, or any subsequent president, will ever appear again at the Sun Dome. As indicated, there are a number of potential venues for a presidential appearance, such as the Convention Center, the St. Pete Times Forum, Raymond James Stadium and Legends Field, that are closer to downtown Tampa, as well as to St. Petersburg and Clearwater. Therefore, another presidential appearance at

the Sun Dome is plainly something that may never happen at all.

The conclusion that the plaintiffs' request for prospective relief is not fit for judicial decision is underscored by the plaintiffs' inability at the hearing to articulate meaningful terms for an injunction. Under Rule 65(d), Fed.R.Civ.P., an injunction "shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." The best the plaintiffs could come up with at the hearing was something along the lines of a prohibition against violating First Amendment rights. However, as the defendant correctly points out, that type of "obey the law" injunction is improper. Burton v. City of Belle Glade, 178 F.3d 1175, 1200-01 (11th Cir. 1999).

For these reasons, the plaintiffs' claim against defendant Basham is not fit for judicial decision. See The Association for Children for Enforcement of Support, Inc. v. Conger, supra, 899 F.2d at 1165-66.

Further, the plaintiffs will not suffer any significant hardship if judicial resolution of the plaintiffs' claim for prospective relief against the Secret Service is deferred until the claim is presented in a concrete setting, if it ever is. As indicated, two and one-half years have passed and the plaintiffs have not alleged that, during that period, their protest activities have been thwarted by any practice of the Secret Service.

Moreover, prior to the time the plaintiffs' claim is presented in a concrete setting, the plaintiffs are not exposed to arrest by the Secret Service for engaging in First Amendment activities. The relevant Secret Service policy and practice does not contain any criminal sanction. The plaintiffs, rather, are only exposed to arrest at presidential appearances for violating state or local law. In other words, the plaintiffs would not be subject to arrest for protesting, but only for protesting at a location that violates state or local law to do so. Thus, it is the plaintiffs' own conduct, and not anything in the Secret Service's policy or practice, that would expose them to arrest.

It is recognized that First Amendment rights warrant special protection. However, "[n]ot every chilling effect on protected expression caused by a general possibility of enforcement creates a justiciable controversy." J.N.S., Inc. v. State of Indiana, 712 F.2d 303, 306 (7th Cir. 1983). Rather, "even in a first amendment context the injury-to-the-plaintiff requirement cannot be ignored." Hallandale Professional Fire Fighters Local 2238 v. City of Hallandale, supra, 922 F.2d at 760. Consequently, the presence of a First Amendment claim does not overcome the lack of fitness of that claim for judicial decision and the absence of any significant hardship to the plaintiffs of withholding court consideration. See The Association for Children for Enforcement of Support, Inc. v. Conger, supra, 899 F.2d at 1165-66. Therefore, the claim against the Secret Service should be dismissed because it is not ripe.

The conclusion that the plaintiffs' claim does not set forth a justiciable controversy is supported by Acorn v. The City of Philadelphia, 2004 WL 1012693 (E.D. Pa.). In

Acorn, the plaintiffs sought declaratory and injunctive relief against the Secret Service and Philadelphia, seeking to be treated equally with other demonstrators at future public functions, regardless of whether the demonstrators support or oppose government policies. The plaintiffs attempted to establish their claim by pointing to instances of alleged First Amendment violations by the Secret Service. Id. at *2. Nevertheless, the court dismissed the case, saying that the "plaintiffs' claims are too amorphous to be justiciable at this point in time." Id. at *3. The court stated that at most "there is a likelihood that ... disputes will arise as to whether plaintiffs ... are being improperly limited in their protest activities, and that, if such disputes cannot be resolved amicably, judicial intervention by some court may be appropriate." Id. The court added that "the proper resolution of any such disputes must take place in the jurisdiction where such disputes arise, and where the specific factual context can readily be developed." Id. Accordingly, the court held that "[t]he potential violations alleged by [the] plaintiffs are simply not yet ripe." Id.

-18-

IV.

In sum, there are two reasons why the plaintiffs' claim against the Secret Service is not justiciable. First, the plaintiffs do not have standing to assert their claim for prospective relief because they have not alleged that they are facing a real and immediate threat of future injury. Second, the plaintiffs' claim is not ripe since it is not fit for judicial decision and the plaintiffs will not suffer any significant hardship if judicial consideration is withheld.

It is, therefore, upon consideration

ORDERED:

That the Defendant United States Secret Service's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) be, and the same is hereby, GRANTED, and defendant W. Ralph Basham is DISMISSED from this case.

DONE and ORDERED at Tampa, Florida, this 18th day of May, 2005.

*[signature: Thomas G. Wilson]*

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE